**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **DAVID TOREN,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    16 cv 1885 (RJL) |
| **v.** | ) |
| | ) |
| **THE FEDERAL REPUBIC OF GERMANY et al.,** | ) |
| | ) |
| **Defendants.** | ) |

_____)

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT**
**MATTER JURISDICTION, FOR LACK OF PERSONAL JURISDICTION,**
**FOR FAILURE TO EXHAUST REMEDIES IN GERMANY AND**
**UNDER THE DOCTRINE OF _FORUM NON CONVENIENS_**

Come now the Defendants, the Federal Republic of Germany, the Federal Ministry of

Finance for the Federal Republic of Germany, the Federal Ministry for Economic Affairs and

Energy for the Federal Republic of Germany, and the Department of Culture and Media of the

Chancellery of the Federal Republic of Germany, by counsel, and move this Court to:

(1) Dismiss the Complaint pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter

jurisdiction because the Defendants are immune from the jurisdiction of the courts of

the United States pursuant to 28 U.S.C. 1602, _et. seq.,_ the Foreign Sovereign

Immunities Act ("the FSIA");

(2) Dismiss the Complaint pursuant to Fed. R. Civ. P 12(b)(2) for lack of personal

jurisdiction;

(3) Dismiss the Complaint pursuant the doctrine of prudential exhaustion of remedies;

and

(4) Dismiss the Complaint pursuant the doctrine of _forum non conveniens_.

The factual and legal bases for the motion are set out below in the Defendants' Memorandum of Law in Support of the Motion.

## MEMORANDUM OF LAW

The Complaint in this matter was filed on September 20, 2016 by the Plaintiff, David Toren.  Mr. Toren alleges that he is a United States Citizen who resides in New York.  (Comp. ¶ 13).  The Defendant, the Federal Republic of Germany is a foreign state as that term is defined in the Foreign Sovereign Immunities Act ("the FSIA"), 28 U.S.C. § 1602, *et. seq*.  The other three Defendants, the Federal Ministry of Finance for the Federal Republic of Germany, the Federal Ministry for Economic Affairs and Energy for the Federal Republic of Germany, and the Department of Culture and Media of the Chancellery of the Federal Republic of Germany, are also foreign states as that term is defined in the FSIA.  The Complaint alleges that the Defendants, who would otherwise be immune from jurisdiction in this Court under the FSIA, lost that immunity pursuant to the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2), and 28 U.S.C. § 1605(a)(3), the so-called expropriation in violation of international law exception.

## The Alleged Facts Relevant to Defendants' Motion

The Complaint alleges that: The Plaintiff is the heir of David Friedmann, from whom valuable artwork and securities were stolen by the Nazis.  (Comp. ¶¶ 3, 9, 11).  A painting that had been seized by the Nazis from David Friedmann ("Two Riders") was returned to Plaintiff by Defendant Department of Culture and Media in 2015 after it was first discovered in 2013.  (Comp. ¶¶ 5, 10).  The discovery of the "Two Riders" painting caused Plaintiff to do research to discover the whereabouts and identity of other property seized from David Friedmann.  (Comp. ¶ 76).  Plaintiff located an inventory of the contents of David Friedmann's home which were

taken by the Nazis.  This inventory, among other things, identified 54 paintings taken from Mr.

Friedmann.  In addition, Plaintiff located documents memorializing the transfer of unidentified

securities owned by Mr. Friedmann from Mr. Friedmann's bank to the Nazi government.

Plaintiff seeks an order declaring him to be the lawful heir to the artwork and securities,

the return of this property or damages in an amount equal to the value of this property.  In

addition, Plaintiff seeks an accounting for the artwork and securities.

## Argument

I.      **The Complaint should be dismissed for lack of subject matter jurisdictions as the Defendants are immune from prosecution under the FSIA's broad grant of immunity to foreign states.  Neither the commercial activity exception nor the expropriation in violation of international law exception to that broad grant of immunity applies in this case.**

Historically foreign sovereigns and their agencies and instrumentalities had no right to

any immunity in the Courts of the United States.  *Schooner Exchange v. M'Faddon*, 11 U.S. 166,

3 L.Ed. 287 (1812).  However, while not a matter of right, the United States did, as a matter of

grace and comity, waive its right to exercise its jurisdiction over foreign sovereigns in certain

cases.  *Ibid.*  The Courts historically deferred to the Executive Branch's determination as to

whether to exercise or waive jurisdiction in cases involving foreign sovereigns.  Until the early

1950s, the Executive Branch requested immunity for foreign sovereigns in all cases.  *Verlinden*

*B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 486, 76 L. Ed 2d 81, 103 S. Ct. 1962 (1983).

Thereafter the Executive Branch, acting through the Department of State, made inconsistent

suggestions to the courts regarding sovereign immunity.  In the wake of the resultant confusion

and inconsistency Congress acted in 1976 by enacting the FSIA.

The FSIA is the sole source of subject matter jurisdiction against a foreign state.[1] *Cabiri v. Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999) (*citing Argentine Republic v. Amerada Hess Shipping Corp*, 488 U.S. 428, 439, 109 S.Ct 683, 690, 102 L. Ed. 2d 818 (1989)).  The broad grant of immunity is found in 28 U.S.C. 1603 and states:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act [enacted Oct. 21, 1976] a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

As foreign states, the Federal Republic of Germany and the other Defendants[2] are immune from suit in the courts of the United States under the provisions of the FSIA.  Under the FSIA, a foreign state is presumptively immune from the jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state.  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993).

The exceptions to this broad grant are contained in 28 U.S.C. 1605.[3]  These statutory exceptions are the source of the federal district court's subject matter jurisdiction and "if no exception applies, the district court has no jurisdiction."  *Odhiambo v. Republic of Kenya*, 764 F.3d 31 (D.C. Cir. 2014); *cert. denied*, 2016 U.S. LEXIS 4064, 136 S. Ct. 2504, 195 L. Ed.2d 839 (2016).

> The statute [FSIA] must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction

---

[1]   Plaintiff alleges that this Court has jurisdiction pursuant to 28 U.S.C. 1330.  Section 1330 confers original jurisdiction on the district court only to the extent that "the foreign state is not entitled to immunity under" the FSIA.

[2]   Plaintiff correctly alleges that the other three Defendants, as political subdivisions of the Federal Republic of Germany, are foreign states under the FSIA.  28 U.S.C. 1603(a).

[3]   Section 1607 which addresses counterclaims by foreign states is not implicated in the instant motion.

in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity. [citation and fn omitted] At the threshold of every action in a district court against a foreign state, therefore, the court must satisfy itself that one of the exceptions applies -- and in doing so it must apply the detailed federal law standards set forth in the Act.

*Verlinden B. V. v. Central Bank of Nigeria*, supra 461 U.S. at 483-484.

Section 1605 (28 U.S.C. 1605) contains a list of exceptions to the general grant of immunity.  Plaintiff alleges that this case falls within the exceptions contained in 28 U.S.C. 1605(a)(2) and (3).

**A.  The Commercial Activity Exception.**

The commercial activity exception is found in 28 U.S.C. 1605(a)(2) and states that:

> (a)  A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> (2)[4] in which the action is based upon a commercial activity carried on in the United States by the foreign state;
>
> or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere;
>
> or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

Plaintiff, who has the burden to establish an exception to immunity, *O'Bryan v. Holy See,* 549 F.3d 431, 446 (6th Cir. 2008), is relying on the third clause in subsection (a)(2), "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  Plaintiff alleges that the act outside the United States in connection with a commercial activity of the foreign state

---

[4]  The spacing in this subsection has been changed to highlight the three distinct variations of commercial activity encompassed by this subsection.

elsewhere was the sale of a painting entitled "The Basket Weavers" (number 252 on the inventory) by an agent of the Gestapo to a Mr. Gurlitt (the father). (Comp. ¶ 28, 29, 71-73). The direct effect in the United States, again according to the Complaint, is that "The Basket Weavers" was not present when the police raided Mr. Gurlitt's son's apartment, thereby preventing Plaintiff from making a claim for the painting.

As will be demonstrated below, the act outside the United States (the expropriation of the painting by the Nazis) was not in connection with a commercial activity because the expropriation was an exercise of the sovereign's police power and therefore not commercial activity. In addition, the alleged fact that Mr. Toren, who claims to be the rightful owner as an heir to Mr. Friedmann, cannot make a claim for the painting, does not thereby cause a direct effect in the United States.

In determining whether an act by a foreign sovereign is commercial activity, the court must look to the nature of the act, rather than its purpose. 28 U.S.C. 1603(d). Acts which are the type of actions by which a private party engages in trade and traffic or commerce are commercial. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992). However, "exercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce." *Saudi Arabia v. Nelson*, *supra* 507 U.S. at 361-362. Here, Plaintiff alleges that the police authorities expropriated the artwork and securities at issue from Mr. Friedmann. As such, the seizure was not "in connection with commercial activity" because, under the laws then in force in the Third Reich, the taking of this property was an exercise of a sovereign's police power.[5] A private actor in the marketplace

---

[5] As the Supreme Court observed in *Nelson,* "the conduct boils down to abuse of the power by the Saudi Government, and however, monstrous such abuse undoubtedly may be, a

could not have seized the artwork.  As such, it is beyond argument that the seizure was the action

of the sovereign and not an action which private parties can engage in commerce.

What Plaintiff appears to be alleging, giving the Complaint the wide berth it is due, is

that, even if the seizure were not in connection with a commercial activity of the foreign state,

the subsequent sale of the painting by an agent employed by the Gestapo somehow morphed the

police power seizure so as to bring it into the four corners of the commercial activity exception.

This construction is fatally flawed.

The fatal flaw is that the act (the seizure) is not independent of the commercial activity

that Plaintiff alleges followed the seizure.  If the act of the foreign state is not in connection with

commercial activity of the foreign state, then subsequent commercial activity of the foreign state

does not transform the original seizure into commercial activity.  *Rong v. Liaoning Province*

*Government*, 452 F.3d 883 (D.C. Cir. 2006); *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d

Cir. 2006) (subsequent commercial transactions involving expropriated property do not give rise

to subject matter jurisdiction over claims arising from the original expropriation).

In *Rong* the defendant, a Chinese province, seized a controlling interest in an automobile

plant from the plaintiff.  The defendant province subsequently sold the assets it controlled as a

result of the seizure and did not provide plaintiff with compensation.  Plaintiff asserted that the

court had subject matter jurisdiction under the same clause of the commercial activity exception

as does Plaintiff herein.  The Circuit Court held that the defendant province was immune under

the FSIA, stating that, "[i]f Rong's interpretation of the commercial activity were correct then

almost any subsequent disposition of expropriated property could allow the sovereign to be haled

---

foreign state's exercise of the power of its police has long been understood for purposes of the
restrictive theory as peculiarly sovereign in nature." *Ibid.* at 361.

7

into federal court under FSIA.  Such a result is inconsistent with our precedent, the decisions of other circuits and the [FSIA's] purpose."  *Rong v. Liaoning Province Government*, *supra* 452 F.3d at 886.

In a decision after *Rong,* the D.C. Circuit distinguished *Rong* in holding that entering into a bailment agreement was an act in connection with commercial activity.  *De Csepel v. Republic of Hung.*, 714 F.3d 591 (D.C. Cir. 2013).  The factor that distinguished *De Csepel* from the holding in *Rong* is not present in the instant case.  In *De Csepel* the plaintiff alleged that the act of the foreign sovereign outside of the United States was the entry into a bailment agreement with the plaintiff's family under which the defendant would hold and safeguard the artwork at issue and return it to the plaintiff on demand. ("the complaint contains allegations that the parties directly agreed to a bailment relationship.")  *Ibid.*714 F.3d at 599.  The court found that entry into a bailment agreement "easily" came within the type of activity engaged in by private parties in the marketplace.  This is clearly distinguishable from the case at bar where the Plaintiff alleges that the act of the foreign sovereign was the seizure of Mr. Friedmann's property by the Nazi government in accordance with the Nazi laws the Plaintiff has set out in the Complaint.  That is what the Plaintiff has alleged, and that is what the analysis of subject matter turns on as the "plaintiffs are 'masters of the complaint' with the power to bring those claims they see fit. . . ." *Id.* at 714 F.3d 598 (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).

Even if there were commercial activity, the commercial activity exception does not apply unless that commercial activity causes a direct effect in the United States.  That raises the issue of whether the mere fact that Plaintiff is present in the United States creates the required direct effect in the United States.  It does not.  Plaintiff's allegations that the painting "The Basket

Weavers" was not available for return to him because it was sold at auction after a police power seizure some 70 plus years ago, falls far short of alleging a sufficient factual basis for the "direct effect" required for the "commercial exception" to remove immunity from a foreign state.  28 U.S.C. §1605(2)(b) requires a "direct effect."  The effect is "direct" if it follows "as an immediate consequence of the defendant's . . . activity."  *Republic of Arg. v. Weltover, Inc.*, *supra* 504 U.S. at 618; *Verlinden B. V. v. Central Bank of Nigeria*, *supra* 461 U.S. at 490 (recognizing that Congress "enact[ed] substantive provisions [of the FSIA] requiring some form of substantial contact with the United States" in order to avoid turning U.S. courts "into small international courts of claims, open to all comers to litigate any dispute which any private party may have with a foreign state anywhere in the world") (internal quotations and citations omitted).[6]  A direct effect is one which has no intervening element, but rather flows in a straight line without deviation or interruption. *Upton v. Empire of Iran,* 459 F. Supp. 264, 266 (D.D.C.1978).

Here, Plaintiff claims that the alleged breach damaged him because he cannot reclaim his property or the financial equivalent thereof.  Where there is no requirement that payment (*i.e.,* performance) be made in the United States or that the Plaintiff has the authority to designate the place of payment, the fact that Plaintiff is a United States citizen does amount to the required

---

[6] Plaintiff's interpretation of "direct effect" is far more expansive than is intended by the FSIA and well beyond the interpretation of the term "direct effect" allowed by numerous courts. For example, if Plaintiff is correct (which he is not), the FSIA would permit *any* American citizen to sue a foreign government in the United States if that citizen alleges that the foreign government illegally interfered or confiscated property in the foreign country belonging to a *relative* of the American citizen. Under Plaintiff's interpretation, the American citizen may allege the American citizen was a lawful heir would have inherited the property at some time in the future and that the denial of this potential and contingent inheritance had an economic consequence in the United States.  Plaintiff's allegations, while sympathetic, do not establish a "direct effect" or an immediate impact necessary to remove the sovereign immunity of Defendant under the FSIA.

direct effect in the United States. *Odhiambo v. Republic of Kenya*, *supra* 764 F.3d at 40 ("Odhiambo does not argue that his U.S. presence or U.S. citizenship alone suffices to create a direct effect in the United States. As explained above, the relevant precedents would foreclose any such contention."); *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 139-140 (2d Cir. 2012). ("Mere financial loss by a person - individual or corporate - in the U.S. is not, in itself, sufficient to constitute a 'direct effect.'"); *Adler v. Federal Republic of Nig.*, 107 F.3d 720, 726-727 (9th Cir. 1997); *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143 (D.C. Cir. 1994) (no direct effect where no United States location designated for the place of payment).

The case that appears to be the most factually similar to the instant case, is *Westfield v. Fed. Republic of Germany*, 633 F.3d 409 (6th Cir. 2011). In *Westfield*, the plaintiff was the heir of Walter Westfield from whom the Nazis seized an extensive collection of artwork. Plaintiff alleged that Walter Westfield had intended to send his artwork to his brother in Tennessee to prevent its seizure. He was unsuccessful is so doing and subsequently died at the hands of the Nazis. In 2004 the plaintiff learned of the collection and the fact that the collection had been sold off at auction during 1939, 1943 and 1944. He sued in federal district court to recover the value of the artwork from the Federal Republic of Germany. Plaintiff asserted that Germany was not immune, relying on the same clause of the commercial activity exception as does Mr. Toren in this case. The district court granted the Federal Republic of Germany's motion to dismiss, holding that the seizure was not in connection with commercial activity. *Westfield v. Fed. Republic of Germany*, 2009 U.S. Dist. LEXIS 65133 (M.D. Tenn. July 28, 2009). The Court of Appeals affirmed, but on the basis that there was no direct effect in the United States. The Court of Appeals held that, notwithstanding the fact that plaintiff alleged that the artwork was intended to be sent to Tennessee, "we cannot conclude that Walter Westfield's (sic) intention to transfer

10

the proceeds to the United States caused a direct effect here." *Westfield v. Fed. Republic of Germany*, *supra* 633 F.3d at 417.  The Court explained that, "Unlike sovereigns that obligated themselves to make payment in the United States, the only reason effects were felt in the United States is because Westfield (sic) had intended to send his art collection to Nashville."  *Ibid.* 633 F.3d at 416.  Because these facts did not establish a direct effect in the United States the Westfield complaint was dismissed, as the Federal Republic of Germany was immune under the FSIA.

Lastly, the allegations concerning the commercial activity exception simple allege that "the Defendant" engaged in commercial activity. (Comp. ¶ 28).  It does not specify which Defendant the allegation applies to.  Since there are four Defendants this allegation is fatally flawed.

**B.  The "Expropriation" Exception.**

The Plaintiff alleges (or more accurately partially alleges) the expropriation exception to the FSIA's broad grant of immunity.  To establish subject matter jurisdiction pursuant to the expropriation or "takings" exception of the FSIA, a plaintiff must demonstrate each of four elements

(1)    that rights in property are at issue,

(2)    that the property was "taken,"

(3)    that the taking was in violation of international law, and, depending on whether the defendant is a sovereign or an agency or instrumentality of a sovereign, either

(4)(a)  that property . . . is present in the United States in connection with a commercial activity carried on in the United States by the foreign state (applicable to sovereigns), or

(4)(b)  that property . . . is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States (applicable to agencies and instrumentalities of sovereigns not classified as the foreign state).

28 U.S.C. § 1605(a)(3).

Here the is no question that the Complaint alleges that property rights are at issue or that the property was taken.

The Complaint's allegations that the Nazi government expropriated Mr. Friedmann's property is, standing alone, insufficient to establish a violation of international law.  United States courts have long recognized that the expropriation by a sovereign state of the property of its own nationals does not implicate settled principles of international law.  *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1105 (9th Cir. 1990); *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1396-98 (5th Cir. 1985); *Yang Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 101 (D.D.C. 2005).  Moreover, "confiscations by a state of the property of its own nationals, no matter how flagrant and regardless of whether compensation has been provided, do not constitute violations of international law."  *F. Palicio y Compania, S.A. v. Brush*, 256 F. Supp. 481, 487 (S.D.N.Y. 1966), *aff'd*, 375 F.2d 1011 (2d Cir. 1967); *see also*, *United States v. Belmont*, 301 U.S. 324, 332, 81 L. Ed. 1134, 57 S. Ct. 758 (1937).

However, Plaintiff also alleges that the expropriation of property was a part and parcel of the Nazi genocide of the Jewish population.  (Comp.  ¶¶ 44, 58).  Under current law in this Circuit "Section 1605(a)(3)'s reference to 'violation[s] of international law' therefore includes genocide notwithstanding that a sovereign's actions against its own citizens traditionally fell outside the purview of international law." *Simon v. Republic of Hung.,* 812 F.3d 127, 145 (D.C.

Cir. 2016).  While Defendants understand that this is binding precedent in this Circuit,

Defendants' position is that this was wrongly decided because actions by a sovereign against its

own citizens properly are not a violation of international law as that term is used in Section

1605(a)(3) and want to preserve this issue should the need arise in future proceedings.

The Complaint fails to satisfy elements 4(a) and (b) and, as such, the Court lacks subject

matter jurisdiction over each of the Defendants.  Element 4(a) applies solely to a sovereign state

and requires that the property or property exchanged for the property is present in the United

States in connection with commercial activity of the foreign state in the United States.   Element

4(b) applies solely to an agency or instrumentality of a sovereign state and requires that the

property of any property exchanged for the property is owned or operated by the agency or

instrumentality of a foreign state which is engaged in commercial activity in the United States.[7]

For this Court to have subject matter jurisdiction over the Federal Republic of Germany

under the above-stated exception (identified above as element 4(a)), the Complaint must allege,

with sufficient supporting facts, that the property in question is present in the United States.  In

order to determine whether, in fact, the property in question is present in the United States, the

Court must look to the substance of the allegations.  *Robinson v. Gov't of Malay*, 269 F.3d 133,

140 (2d Cir. 2001).  Here, the Complaint merely repeats the statutory language with no

supporting facts.  ("That property, or property exchanged for such property, is present in the

---

[7] The Court of Appeals for the District of Columbia Circuit has definitively held and exhaustively explained that a) a foreign state retains its immunity unless the property is present in the United States in in connection with commercial activity conducted in the United States and b) an agency or instrumentality of a foreign state retains its sovereign immunity unless the property or property is owned or operated by the agency or instrumentality which is engaged in commercial activity in the United States.  *De Csepel v. Republic of Hung.*, 859 F.3d 1094, 1104-1108 (D.C. Cir. 2017); *rehearing and rehearing en banc denied*, 2017 U.S. App. LEXIS 19382 (D.C. Cir. Oct 4, 2017), 2017 U.S. App. LEXIS 19383 (D.C. Cir. Oct 4, 2017).

United States in connection with numerous commercial activities carried on in the United States by the Federal Republic of Germany.").  A plaintiff must "prove the facts supporting the court's jurisdiction under the FSIA, rather than simply to make a 'non-frivolous' claim to that effect." *Owens v. Republic of Sudan*, 864 F.3d 751, 779 (D.C. Cir 2017), *citing*, *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316, 197 L. Ed. 2d 663 (2017).  The Complaint supplies no facts to prove that the property is in the United States; that property exchanged for the property is present in the United States; or that the property is present in the United States **in connection with[8]** commercial activity. (emphasis added).  Because the factual allegations in Mr. Toren's Complaint are so woefully deficient, there is no subject matter jurisdiction over the Federal Republic of Germany under the expropriation exception to the FSIA broad grant of immunity.

The alternative formulation of the expropriation exception to the FSIA's broad grant of immunity set forth in 28 U.S.C. 1605(a)(3) (identified above as element 4(b)) applies solely to instrumentalities and agencies of a foreign state and has three elements:

1.      The property must have been taken in violation of international law;

2.      That the property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state; and

3.      That agency or instrumentality is engaged in a commercial activity in the United States.

The threshold question is whether each of 1) the Ministry of Finance, 2) the Ministry of

---

8 "The statutory term 'in connection,' as used in the FSIA, is a term of art, and we interpret it narrowly.  Accordingly, we have noted that 'acts are in connection' with commercial activity so long as there is a 'substantive connection' or a 'causal link' between them and the commercial activity." (citations omitted) *Garb v. Republic of Poland*, *supra* 440 F.3d at 587.

Economic Affairs and Energy and 3) the Department of Culture and Media of the Chancellery is agency or instrumentality of the foreign state (Germany) or is regarded under the FSIA as the foreign state itself.  As will be demonstrated herein, each of the three is a foreign state under the FISA.  Plaintiff, in fact, alleges that each is a foreign state.  (Comp. ¶ 4).

There are several instances in which the FSIA treats a foreign state differently than an agency or instrumentality of foreign state.  These include service of process requirements (28 U.S.C. 1608), the availability of punitive damages, and the expropriation exception to the FSIA's broad grant of immunity.  In *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994), the D.C. Circuit Court of Appeals was called upon to determine whether the Bolivian Air Force constituted a part of the Bolivian state or was an agency or instrumentality of that state for purposes of service of process under the FSIA.  To make this determination the D.C. Circuit adopted a "core functions" test, asking whether the defendant is "an integral part of a foreign state's political structure" or, by contrast, is "an entity whose structure and function is predominantly commercial."  *Ibid.* 30 F.3d at 151.  Citing *Transaero* with approval, the Fifth Circuit has also adopted the core functions test.  *Magness v. Russian Fed'n*, 247 F.3d 609, 613 (5th Cir. 2001).  While these cases arose under the service of process section of the FSIA, the D.C. Circuit applied the same "core functions" test to its analysis of another section of the FSIA. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).  The Second Circuit has applied the core functions test to the expropriation exception which is at issue in this case.  *Garb v. Republic of Poland*, *supra.* 440 F.3d at 593-594 ("Because we are persuaded by *Transaero*'s analysis of legislative and international law sources, and because this Circuit and others have already applied T*ransaero*'s reasoning in analogous contexts, we apply *Transaero* to the facts here and inquire 'whether the core functions' of the Ministry of the Treasury of Poland 'are

predominantly governmental or commercial.'").

Applying the "core functions" test to each of the other three Defendants determines whether the second portion of the expropriation exception is applicable to that defendant.  If under the "core functions" test a defendant's core functions are predominantly governmental, then that defendant, just like the Federal Republic of Germany, is immune, since the property in question is not adequately alleged in the Complaint to be in the United States in connection with commercial activity.  The Ministry of Finance and the Ministry of Economic Affairs and Energy are cabinet departments of the Federal Republic of Germany and their core functions clearly are governmental.  *Garb v. Republic of Poland*, 207 F. Supp. 2d 16, 17 (EDNY 2002), *aff'd*, 440 F.3d 579 (2d Cir. 2006) ("Ministry of the Treasury would appear to be an integral part of Poland's political structure, and its core function--to hold and administer the property of the Polish state--is indisputably governmental."). The Department of Culture and Media of the Chancellery is run by a Minister of State in The Federal Chancellery.

(https://www.bundesregierung.de/Webs/Breg/EN/FederalGovernment/ChancelleryMinist
ers/_node.html;jsessionid=A546B3E3E58ED37FE9F47DC423C7F0DD.s6t2).  The Federal Chancellery is the executive branch of the government of the Federal Republic of Germany and, as such, its functions are clearly governmental.  Hence, each of the Defendants are, for purposes of the FSIA, the foreign state (the Federal Republic of Germany) and are immune for the failure of the Complaint to plead facts which support the application of the expropriation exception.

Even if the one or more of the three other Defendants were not regarded as a foreign state under the FSIA, the expropriation exception in 28 U.S.C. 1605(a) only operates to give the Court subject matter jurisdiction over each of the other three Defendants if (1) the expropriated property or property exchanged for such property is owned or operated by each said Defendant

and (2) if each said Defendant is engaged in a commercial activity in the United States.  The

Complaint alleges that the Ministry of Finance and the Ministry of Economics "holds" the

property.  It does not allege, as is required, that any of these three Defendants "owns or operates"

the property.  More importantly, even if "holds" is held to be the functional equivalent of "owns

and operates," the Complaint fails to allege any facts to support its bald claim that these

ministries "hold" the property in question.  The Complaint makes absolutely no allegation, be it

boilerplate or otherwise, that the Department of Culture and Media of the Chancellery owns or

operates the property in question. The failure of the Complaint to allege facts supporting this

Court's jurisdiction is a fatal deficiency.  As such, the Ministry of Finance, the Ministry of

Economics and The Department of Culture and Media of the Chancellery are immune, as the

expropriation exception does not remove their immunity even if they are found to be agencies

and instrumentalities of the state, rather than the foreign state itself.

> **II.     The Complaint should be dismissed for lack of personal jurisdiction
> pursuant to Fed. R. Civ. P. 12(b)(2).**

Under the FSIA, personal jurisdiction equals subject matter jurisdiction plus valid service

of process.  28 U.S.C. 1330(b); *I.T. Consultants, Inc. v. Islamic Republic of Pak.*, 351 F.3d 1184,

1191 (D.C. Cir. 2003); *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235

F.3d 738, 746 (2d Cir. 2000); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir.

1991).  As demonstrated above, Plaintiff has failed to establish subject matter jurisdiction by

establishing that one of the enumerated statutory exceptions to sovereign immunity applies.

Hence, the Complaint fails to establish subject matter jurisdiction, which is the first part of the

two-part test for personal jurisdiction under the FSIA.  The second prong of the test is that there

be valid service which has been accomplished.  The Court does not have personal jurisdiction

over the Defendants, as it does not have subject matter jurisdiction even though service of

process was sufficient.  The Court therefore should dismiss the complaint pursuant to Fed R. Civ. P. 12(b)(2).

### III.    The Court should decline to exercise jurisdiction pursuant to the prudential exhaustion doctrine and the *forum non conveniens* doctrine.

Even if the Court finds that it has subject matter jurisdiction over the cause of action and personal jurisdiction over the Defendants it should decline to do so until and unless the Plaintiff exhausts it remedies in the Federal Republic of Germany.  Additionally, the Court should decline to exercise jurisdiction as Germany is a more convenient forum to resolve the matters raised in the Complaint.

### A.  Exhaustion of Remedies in Germany.

The prudential exhaustion of remedies doctrine in FSIA expropriation cases is grounded in the idea  that comity among nations and "international law favors giving a state accused of taking property in violation of international law an opportunity to 'redress it by its own means, within the framework of its own legal system' before the same alleged taking may be aired in foreign courts" *Fischer v. Magyar Államvasutak Zrt*, 777 F.3d 847, 855 (7th Cir. 2015) (*quoting Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661 (7th Cir. 2012)), except where requiring exhaustion would be futile or imaginary.  *Ibid*. 777 F. 3d at 858.  In this Circuit, in a case where the alleged violation of international law was genocide, the Circuit Court invited the district court "to consider on remand, should the defendants assert it, the third form of exhaustion argument: whether, as a matter of international comity, the court should decline to exercise jurisdiction unless and until the plaintiffs exhaust available Hungarian remedies." *Simon v. Republic of Hung*., 812 F.3d 127, 149 (D.C. Cir. 2016).  On remand the district court did consider exhaustion (as well as *forum non conveniens*) and dismissed based on both prudential

exhaustion and *forum non conveniens*. *Simon v. Republic of Hung.*, 2017 U.S. Dist. LEXIS 161506 (D.D.C. September 30, 2017).

*Simon*, like this case, is a Holocaust case. The alleged violation of international law in *Simon* was genocide, rather than simply an uncompensated taking violation. In an extensive and well-reasoned opinion, Chief Judge Howell analyzed the international comity considerations in favor of prudential exhaustion, as well as whether requiring the plaintiff to exhaust remedies in Hungary would be futile. The *Simon* analysis, applied to the allegations in this case, dictate the same result as in *Simon*.

Judge Howell held that the lack of an exhaustion requirement in the FSIA is not a bar to application of the prudential exhaustion requirement because of its similarity to the *forum non conveniens* doctrine which "remains fully applicable in FSIA cases," despite lacking a statutory basis. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 100, 352 (D.C. Cir. 2002). Judge Howell also disposed of the argument that exhaustion is only required where a dispute is brought in an international forum by pointing out that, under the Seventh Circuit formulation, prudential exhaustion is not a direct translation of the exhaustion requirement for international tribunals. After acknowledging that applying the doctrine may, at some future date, require the court to revisit the case and be called upon to evaluate the judicial proceeding in another country, on balance the prudential exhaustion doctrine should be applied. "The prudential exhaustion doctrine recognizes the risks of unnecessarily infringing on the sovereignty of a foreign nation while also guaranteeing that the plaintiffs are afforded an adequate forum for their claims." *Simon*, 2017 U.S. Dist. LEXIS 161506 at *26. In addition, where the case involves historical events of political significance, there are comity interests in allowing a foreign state to use its courts to resolve the matter. *Ibid*. at *27.

Judge Howell set out three factors that need to be considered in determining whether it would be futile to require the plaintiff to exhaust in the courts of the defendant foreign sovereign. These are: (1) whether (in this case) Germany's courts provide "congruent" remedies; (2) the existence of procedural roadblocks; and (3) the adequacy of German courts.  *Id.* at *22.  The plaintiff bears the burden of demonstrating that attempting to exhaust any of their claims would be futile.  *Fischer v. Magyar Államvasutak Zrt*, *supra* 777 F.3d at 867.  The Complaint in the instant case does not purport to address the exhaustion requirement or allege that to do so would be futile.  The German judicial system has been found to be an adequate forum by United States courts.  *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp. 3d 1179, 1193 (N.D. Ill. 2014) ("Germany is among the 13 nations whose courts have been consistently deemed to be adequate alternative fora. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 418 (D.N.J. 2008) (*citing* Tom McNamara, *International Forum Selection and Forum Non Conveniens*, 34 Int'l Law 558, 560-61 (2000)), *aff'd*, 529 F.3d 183 (3d Cir. 2008)"); *Deirmenjian v. Deutsche Bank, A.G.*, 2006 U.S. Dist. LEXIS 96772 (C.D. Cal Sept. 26, 2006).

## B.  *Forum non Conveniens*

Notwithstanding the strong presumption in favor of the plaintiff's selected forum, the Court should dismiss this action under the *forum non conveniens* doctrine because an adequate forum exists in Germany and balancing the public and private interest factors favors dismissal. *Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008). ("whether an adequate alternative forum for the dispute is available and, if so, whether a balancing of private and public interest factors strongly favors dismissal.").  The private interests to be considered include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing,

witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability (sic) of a judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Here, all the relevant documents and records are in Germany and are in the

German language.  Many, if not all, of the witnesses, including custodians of records and,

if living, witnesses to the events, are in Germany.  Process to obtain documents and/or

witnesses is more readily available in Germany, as is service of that process.

The public interest factors include:

the "local interest in having localized controversies decided at home;" the possibility of holding the trial in a forum "at home with the [] law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself;" and avoiding the imposition of jury duty on "people of a community which has no relation to the litigation" and other "administrative difficulties" that flow from foreign litigation congesting local courts.

*MBI Group, Inc. v. Credit Foncier du Cameroun*, 616 F.3d 568, 576 (D.C. Cir. 2010) *quoting*

*Gulf Oil Corp. v. Gilbert*, *supra* 330 U.S. at 508-509.

Judge Howell addressed the first factor and what he held regarding Hungary is equally

applicable to Germany.

Hungary's interest in this case goes beyond merely defending against potential liability for its conduct during World War II.  Hungary has an interest in every part of the litigation, and has a moral interest, if not obligation, to hear the plaintiffs' claims and provide them appropriate relief.  By contrast, binding Supreme Court precedent cautions federal courts against exercising broad jurisdiction over foreign sovereigns.  *See Pimentel*, 553 U.S. [851 (2008)] at 866 (noting that where "claims . . . arise from events of historical and political significance . . . [t]here is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so").

*Simon v. Republic of Hung.*, *supra* 2017 U.S. Dist. LEXIS 161506 at *51-52.

It is also true that, if this case remains here, the Court will be required to interpret and

apply an extensive array of German laws, which in the arena of Holocaust-related property rights cases, are highly complex and more appropriately adjudicated by German courts. As such, and, in light of the language difficulties, this case will be time consuming and administratively burdensome for a United States District Court.

The private and the public interest factors weigh in favor of a dismissal based on the doctrine of *forum non conveniens* **.**

## **CONCLUSION**

All four Defendants are immune under the FSIA, as neither the commercial activity exception nor the expropriation exception applies. The alleged sale of the property after it was seized is not commercial activity, as the seizure was governmental action and subsequent sale of the seized property is not commercial activity for the FSIA purposes. In addition, there is no direct effect in the United States. The expropriation exception does not apply, as there are no factual allegations that the property or property exchanged therefore is present in the United States or that the defendants other than the Federal Republic, own or operate such property.

Even if the defendants are not immune under the FSIA, the Court should decline to exercise jurisdiction and require the Plaintiff to exhaust his remedies in Germany. Lastly, Germany is a more convenient forum and the factors that apply should permit the Court to dismiss the case on that basis.

Dated: November 20, 2017

s/ *Jeffrey Harris*
Jeffrey Harris, Esq. JH2121
Max Riederer von Paar, Esq.
Walter E. Diercks, Esq.
RUBIN, WINSTON, DIERCKS, HARRIS
    & COOKE, LLP
1201 Connecticut Avenue, N.W., Ste 200
Washington, D.C. 20036
(202) 861-0870
jharris@rwdhc.com

22

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ *Jeffrey Harris*
Jeffrey Harris

Service List:

By Notice of Electronic Filing:

Peter J. Toren, Esq.
LAW OFFICE OF PETER TOREN
3028 Newark Street, NW
Washington, DC 20008
(646) 623-4654
Email: torenpeter@gmail.com