UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER TOREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 16-1885 (RJL) |
| | ) |
| FEDERAL REPUBLIC OF | ) |
| GERMANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(August 23, 2022) [Dkt. # 51]

Pending before the Court is a motion to dismiss for lack of subject matter jurisdiction filed by defendant Federal Republic of Germany ("Germany") pursuant to Federal Rule of Civil Procedure 12(b)(1). Germany contends that, as a foreign sovereign, it is immune from the claims brought here by plaintiff Peter Toren, who seeks damages stemming from the alleged taking of art and other valuable assets from his great-uncle, David Friedmann, by the German Nazi regime in the course of the Holocaust.[1] Toren argues that his claims are encompassed by the so-called "expropriation exception" to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(3). This case was stayed pending the Supreme Court's decision in a similar case concerning the application and scope of the expropriation exception, *Philipp v. Federal Republic of Germany. See* 141 S.

---

[1] This suit was originally brought by David Toren, Peter Toren's father, but unfortunately David Toren passed away during the suit's pendency. The Court granted Peter Toren's motion to substitute as plaintiff for his father. *See* Minute Order, July 27, 2020.

1

Ct. 703 (2021). Following amendment of the complaint and the Supreme Court's decision in *Philipp*, Germany renewed its motion to dismiss the now-operative Second Amended Complaint. As explained below, the Court agrees with Germany that, following *Philipp*, Toren's claims are not encompassed by the FSIA's expropriation exception. Accordingly, the Court lacks subject matter jurisdiction to adjudicate Toren's claims, and Germany's motion to dismiss must be **GRANTED**.

## BACKGROUND[2]

### I.     Factual Background

The present case arises from the historically horrific conduct of Germany's Nazi regime in the lead-up to and course of World War II. David Friedmann was a "wealthy industrialist" in Breslau, Germany (now Wrocław, Poland). Pl.'s Second Amended Complaint ("SAC") ¶¶ 3, 13 [Dkt. # 49]. Because he was Jewish, Friedmann "was declared an enemy of the state [in 1939] and confined by the Gestapo before he died in 1942." *Id.* ¶ 3. At the same time as it confined Friedmann, the Nazi regime confiscated a large quantity of art belonging to him, as well as a number of securities. *See id.* ¶¶ 8, 11. Friedmann's art collection included works by "French impressionists such as Courbet, Pissarro, Raffaëlli, [and] Rousseau," as well as by "well-known landscape painters, such as Frits Thaulow, Adolf Oberländer, and Walter Leistikow." *Id.* ¶¶ 80–81

In 2013, David Toren, the original plaintiff in this case and the father of the current plaintiff, Peter Toren, learned that a painting he recalled from Friedmann's home, Max

---

[2] The facts are drawn from Toren's Second Amended Complaint and, to the extent they are relevant to the Court's decision on the pending motion, are undisputed.

Liebermann's "Two Riders on the Beach," had been recovered from the collection of the son of a noted Nazi art dealer. *Id.* ¶¶ 6–7. Friedmann was David Toren's great-uncle, *id.* ¶ 8, and David Toren had seen "Two Riders" at Friedmann's house prior to his fleeing Germany for Sweden in 1939, *id.* ¶¶ 2, 7. After the "Two Riders" discovery, Toren undertook an investigation to prove that his family lawfully owned "Two Riders" and to learn what had become of the rest of the family's property. *Id.* ¶ 7. This research ultimately led to the discovery in a Polish archive of an inventory list identifying items that had been taken from Friedmann by the Nazis. *See id.* ¶¶ 9–11. The Nazi regime eventually sold the confiscated property. *See id.* ¶¶ 101–107, 129–138.

Of course, the specific harms inflicted on Toren were part of a broader series of atrocities committed by the Nazi regime. Indeed, as relevant here, German Jews were formally stripped of nearly all of their rights of German citizenship by a series of governmental actions and decrees. *See generally id.* ¶¶ 42, 44, 45. Among these actions were a 1935 law that demoted German Jews to a second-class citizenship tier; a 1933 law—overwhelmingly used to target Jews—that provided for loss of German citizenship if an individual engaged in certain behaviors and accordingly deemed an "enemy of the state," *see id.* ¶¶ 44, 60–62, 96; the invalidating of passports held by German Jews, *see id.* ¶ 64; and a 1941 law that provided for the loss of "status as a German national" for any German Jew who "takes up ordinary residence abroad," *id.* ¶ 68. These legal maneuvers were intertwined with the Nazi regime's overarching genocidal course of conduct toward Jews living in Germany as well as the other European states that became subject to German rule or control.

## II. Procedural History

David Toren first sued Germany in 2014 to recover "Two Riders on the Beach," and in 2015 Germany agreed to return the painting to him. *See id.* ¶ 10. After learning about the remainder of Friedmann's property, Toren filed the instant suit against Germany in 2016, seeking compensation for the Nazi regime's taking of the unrecovered art and the securities. *See* Compl. [Dkt. # 1]. The case was stayed while two cases presenting similar issues regarding the scope of the FSIA's expropriation exception— *Republic of Hungary v. Simon* and *Federal Republic of Germany v. Philipp*—were heard and decided first by our Court of Appeals and then, eventually, by the Supreme Court. *See, e.g.*, Minute Order, July 9, 2018. Sadly, during the course of the stay, David Toren passed away. His son, Peter Toren, however was available and substituted as the plaintiff in this matter pursuant to Federal Rule of Civil Procedure 25. *See* Minute Order, July 27, 2020.

In February 2021, the Supreme Court issued its decision in *Philipp*. 141 S. Ct. 703 (2021); *see also Simon v. Republic of Hungary*, 141 S. Ct. 691 (mem.) (vacating decision of Court of Appeals in light of *Philipp*). Following that decision, Toren filed the operative Second Amended Complaint, and Germany filed its now-pending renewed motion to dismiss, *see* Def.'s Mot. to Dismiss ("MTD") [Dkt. # 51].

## ANALYSIS

Germany moves to dismiss the Second Amended Complaint primarily on the basis that it is immune from Toren's claims pursuant to the FSIA, and thus the Court lacks

subject matter jurisdiction.[3] The FSIA "creates a baseline presumption of immunity from suit" for foreign sovereigns, meaning that unless one of the FSIA's enumerated exceptions applies to a claim against the sovereign, "a federal court lacks subject matter jurisdiction" over that claim. *Philipp*, 141 S. Ct. at 709 (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). Here, Toren argues that his claims come within the so-called expropriation exception, which provides, in relevant part, that courts may exercise jurisdiction over claims "in which rights in property taken in violation of international law are in issue" and where "that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," 28 U.S.C § 1605(a)(3).

In *Philipp*, the Supreme Court clarified and limited the scope of claims that are encompassed by this exception, focusing specifically on what constituted "property taken in violation of international law." 141 S. Ct. at 709. The *Philipp* plaintiffs were heirs to a collection of medieval relics; the Nazi regime had acquired the collection by coercing its original owners, a consortium of firms owned by German Jews, into selling the relics at a fraction of their value. *See id.* at 708. The heirs argued that the relics were "taken in violation of international law" because their coerced sale "constituted an act of genocide, and genocide is a violation of international human rights law." *Id.* at 709. However, the

---

[3] Germany also moves for dismissal under Federal Rule of Civil Procedure 12(b)(2), arguing that the Court lacks personal jurisdiction over Germany. *See* MTD at 29. Under the FSIA, personal jurisdiction over a foreign sovereign exists only where (1) the sovereign has been validly served and (2) the court has subject matter jurisdiction. *E.g.*, *Schubarth v. Fed. Rep. of Germany*, 891 F.3d 392, 397 n.1 (D.C. Cir. 2018). Germany does not argue it was improperly served, so its argument as to personal jurisdiction is wholly overlapping with its argument as to subject matter jurisdiction, *see* MTD at 29, and I therefore address them here as a single argument.

Supreme Court held that the expropriation exception did not encompass such claims; instead, the exception was limited to property taken in violation of "the international law of expropriation rather than of human rights." *Id.* at 712. Because the expropriation exception was so limited, the Court continued, the so-called "domestic takings rule" applies to all claims brought pursuant to the exception. That rule limits the exception such that it "does not cover expropriations of property belonging to a country's own nationals." *Id.* at 711 (quoting *Republic of Austria v. Altmann*, 541 U.S. 677, 713 (2004) (Breyer, J., concurring)). Accordingly, for purposes of the exception, a "'taking of property' could be 'wrongful under international law' only where a state deprived 'an alien' of property." *Id.* at 712 (quoting REST. (SECOND) OF U.S. FOREIGN RELS. L. § 185 (Am. L. Inst. 1965)).

Germany argues that *Philipp* forecloses the claims here because Friedmann was at all times a German national, and thus the taking of the property at issue was a domestic one that does not come within the expropriation exception.[4] Toren, for his part, relies on the Supreme Court's express disclaimer in *Philipp* that it was not addressing "an alternative argument" that the taking was "not subject to the domestic takings rule because the [victims] were not German nationals" when it occurred—an issue Toren raised in an amicus brief filed in *Philipp*. *See id.* at 715–16; *see also* Br. of Peter Toren as Amicus Curiae in Support of Respondents, *Philipp*, 141 S. Ct. 703 (No. 19-351), 2020 WL

---

[4] Germany makes additional arguments disputing whether the property at issue "or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," as required by the second half of the expropriation exception. *See* MTD at 13–29. However, because I agree with Germany that Toren's claim does not involve "property taken in violation of international law," I do not address these further grounds for dismissal.

6599029. Toren contends that the various Nazi-era decrees described above, together with the Nazi regime's broader campaign of persecution against German Jews, had the effect of rendering Friedmann and other German Jews stateless. Accordingly, Friedmann had been deprived of his German nationality at the time of the taking of his property, and thus the claim was not subject to the domestic-takings bar.

However, I need not resolve the thorny question of whether Germany had in fact deprived Friedmann of his German nationality. Instead, I agree with Germany's alternative argument that, in light of *Philipp*, the kind of claim Toren articulates here—involving the taking of property by a foreign state from a person rendered stateless by virtue of that state's conduct—is not encompassed by the expropriation exception, and thus I do not have subject matter jurisdiction. As described above, the Supreme Court held in *Philipp* that property "taken in violation of international law" does not include property taken in the course of a state's genocidal conduct. Though Toren contends that his claim is distinguishable from that precluded by *Philipp*, that argument is unavailing. Instead, Toren's claim here is for all relevant purposes identical to that made in *Philipp*, albeit with an added middle step: in effect, Toren claims that Germany, during the course of a genocidal course of conduct, sufficiently persecuted its Jewish nationals so as to render them stateless, and then took their property. But the addition of the allegations in that middle step—that the genocidal course of conduct at issue rendered its victims stateless— is insufficient to transform Toren's claim into one encompassed by the expropriation exception. Instead, it is in the final analysis a claim that the property was taken in the course

of some other violation of international law. And while the conduct underlying such claims is without question appalling, the Supreme Court has made clear that these claims are not encompassed by the expropriation exception, and thus Germany, like all foreign sovereigns, has been granted immunity from them.

Indeed, to hold otherwise would vitiate the holding of *Philipp*. A plaintiff seeking to get around the domestic-takings rule would need only to plead that a given genocidal course of conduct against a sovereign's own nationals had the particular effect of rendering its victims stateless. And because it does not require much of a leap to link the kinds of terrible state actions that comprise a genocide with a concurrent severance of the connection between a state and its victimized nationals, an exception for this kind of claim would in all likelihood swallow the Supreme Court's rule. Moreover, it would leave a court considering these types of claims in the unenviable position of having to determine whether a given genocidal course of conduct was sufficiently horrific so as to render its victims stateless, just to satisfy itself whether it has jurisdiction to adjudicate the underlying property conversion claims brought by the plaintiff.[5] Nothing in the text of the FSIA suggests Congress intended to require such inquiries at the jurisdictional stage. And indeed, such a requirement would seem to be precisely what the Supreme Court sought to preclude in *Philipp* by making "'the district court sit as a war crimes tribunal to adjudicate claims of genocide,' while 'clear[ing] the way for a wide range of litigation against foreign

---

[5] Indeed, the relatively underdeveloped law of statelessness and its relationship to internationally unlawful state action would make it particularly difficult, if not impossible, for a foreign sovereign to counteract a plaintiff's allegations of statelessness and for courts to determine whether the state's alleged conduct indeed rose to the level of causing statelessness.

sovereigns for public acts committed within their own territories.'" *Philipp*, 141 S. Ct. at 709 (quoting *Philipp v. Fed. Rep. of Germany*, 925 F.3d 1349, 1350 (D.C. Cir. 2019) (Katsas, J., dissenting from denial of rehearing en banc)); *see also Philipp*, 925 F.3d at 1350 (Katsas, J., dissenting from denial of rehearing en banc) (noting that this kind of analysis "oddly matches the jurisdictional equivalent of a thermonuclear weapon (determining the scope of a genocide) to the merits equivalent of swatting a fly (determining whether there was a common-law conversion)").

In sum, then, I do not believe the expropriation exception, as interpreted by the Supreme Court in *Philipp*, encompasses a claim based on a foreign sovereign's rendering its own nationals stateless before taking their property, at least where those two actions are part of the same broad course of conduct.[6]  Because Toren brings just such a claim here, he cannot rely on the expropriation exception to get around the blanket grant of sovereign immunity contained in the FSIA.  Accordingly, Germany remains immune from suit, and the Court does not have subject matter jurisdiction to adjudicate Toren's claim.

---

[6] My conclusion here is indeed the same as that reached by my colleague, Chief Judge Howell, in her recent opinion in *Simon v. Republic of Hungary*, which was remanded from the Supreme Court at the same time as *Philipp* was decided. *See Simon v. Rep. of Hungary*, No. 10-cv-1770, 2021 WL 6196995, at *18–19 (D.D.C. Dec. 30, 2021). As here, the court in *Simon* found that the Supreme Court's decision in *Philipp* precluded a claim brought pursuant to the expropriation exception where "plaintiffs . . . would have been nationals of the offending state but for the genocidal conduct" that was coincident to the challenged taking of property. *Id.* at *19. Even more recently, Judge Howell reaffirmed this holding in a related case, *Heller v. Republic of Hungary. See* No. 21-cv-1739, 2022 WL 2802351 (D.D.C. July 18, 2022) (reiterating "that *Philipp* 'precludes reliance on the egregiousness or genocidal nature of expropriative conduct as a means to escape the limitation of the domestic takings rule" and that "*Philipp* is also irreconcilable with plaintiffs' argument that statelessness induced by genocidal conduct removes such conduct from the confines of the domestic takings rule'" (quoting *Simon*, 2021 WL 6196995, at *16)).
Additionally, like the court in *Simon*, I also do not reach an alternative argument raised by the defendants both here and in *Simon*, namely that the international law of expropriation does not reach any taking by a foreign state of property belonging to stateless persons. *See* Def.'s Reply in Support of MTD at 10–13 [Dkt. # 55]; *see also Simon*, 2021 WL 6196995 at *19 n.20. Whether international law recognizes such a taking is a question of first impression in this Circuit that has to date been addressed by only one federal court, *see Mezerhane v. República Bolivariana de Venezuela*, 785 F.3d 545, 551 (11th Cir. 2015), and I need not address it to decide the motion presently before me.

In closing, while the actions of the Nazi regime toward Friedmann as described in Toren's pleadings were abhorrent and deserve the utmost condemnation, I do not make any finding here concerning whether Toren is entitled to compensation for the taking of Friedmann's property by the Nazi regime. I merely conclude that such compensation cannot be provided by this Court pursuant to the FSIA. As interpreted by the Supreme Court in *Philipp*, that statute provides Germany with immunity from the claims of Toren and others brought in the United States courts.[7]

## CONCLUSION

For the foregoing reasons, the Court does not have subject matter jurisdiction to adjudicate the claims Toren brings against Germany, because Germany is immune from them pursuant to the FSIA. Accordingly, Germany's motion to dismiss the petition pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED** and this case is dismissed. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[7] Germany argues in the alternative that, even if the Court has jurisdiction, it should decline to exercise it pursuant to the *forum non conveniens* doctrine. *See* MTD at 30. Because I conclude that Toren's claims are not encompassed by the expropriation exception, however, I need not address this additional basis for dismissal.